## BALLEN v. GASPARAC.

No. 7354.   Decided March 2, 1950.   (215 P. 2d 391.)

See 48 C. J. S., Joint Adventures, sec. 12. Bills of Particulars, see note, 8 A. L. R. 550. See, also, 41 Am. Jur. 478.

*W. D. Beatie,* Salt Lake City, for appellant.

*Clarence C. Nelson,* Salt Lake City, for respondent.

WADE, Justice.

Mary Ballen, plaintiff below and appellant herein, commenced this action seeking an accounting from George A. Gasparac, Jr., respondent herein, and for a dissolution of a joint enterprise entered into between the parties.

The facts are that respondent and appellant while engaged to be married conceived the idea of building a lodge which would be operated the year round. The appellant was to finance the undertaking with money of her own and some to be borrowed from her mother. Respondent was to take charge of the erection of the place. As a result of this plan respondent bought some land in Parley's Canyon, Summit County, Utah, for the sum of $3000, which was advanced by appellant and took the deed in his name. From September, 1946 until February, 1947, he claims to have devoted all of his time to this project sometimes working as much as 15 hours a day, planning, supervising and doing actual labor in conjunction with the carpenters and other

laborers working there. He also procured materials such as pipes which were difficult to obtain at that time and did the landscaping and everything necessary to further the completion of the lodge in an expeditious manner so that it was in a condition to open for business in February, 1947. Appellant had meanwhile advanced further sums towards the building of this lodge, its equipment and other expenses incident to such an enterprise which, including the $3000 advanced for the land, amounted to $14,653.74. Before the lodge opened, she also helped paint the rooms and after the opening of the lodge she worked there in the evenings until June, 1947, when she left. From June, 1947 until November, 1947, when the lodge was closed, respondent worked there alone. During that time he finished two rooms in the upstairs of the lodge and also contributed $1388.49 in cash towards the enterprise.

Before the case came on for trial, the parties stipulated that the property should be listed for sale and if a sale were consummated, that the proceeds be paid to the county clerk to be disposed of in accordance with the court's order.

The court found that appellant had a 73% interest in the property and respondent had a 27% interest in it, and ordered that the property be sold and after certain debts were paid that the proceeds be distributed to the parties in their proportionate interests, and upon so doing that the partnership be dissolved.

Appellant's first assignment of error relates to the admission of evidence by respondent in support of his counterclaim for labor and monies expended after he had failed to file a bill of particulars within ten days after demand for it.

Sec. 104-13-3, U. C. A. 1943, provides:

"It is not necessary for a party to set forth in a pleading the items of an account therein alleged, but he must deliver to the adverse party, within ten days after a demand therefor in writing, a

copy of the account, or be precluded from giving evidence thereof. The court, or a judge thereof, may order a further account when the one delivered is too general or is defective in any particular."

A demand for a bill of particulars had been made by appellant herein on July 29th and respondent did not furnish one until the day the trial commenced, November 15, 1948. Appellant objected to the introduction of any evidence by respondent of his claims because the bill of particulars was not timely filed and because it was too general in nature. The court overruled the objection but stated that if appellant was surprised or put to any disadvantage because of the late filing, he would continue the matter for a sufficient length of time to remedy the situation.

Appellant cites a number of cases from some other jurisdictions wherein the courts have held under statutes similar to ours that the provision that the party failing to furnish a bill of particulars upon demand is to be precluded from giving evidence on the account is peremptory. However, the cases appellant cites from California do not so hold, but say that it is a matter of discretion with the court trying the case whether the evidence should be precluded. See *St. John* v. *Consolidated Construction Co.*, 182 Cal. 25, 189 P. 276; *Fisher* v. *Brotherton*, 82 Cal. App. 532, 255 P. 854, and *McManus* v. *Larson et al.*, 122 Cal. App. 716, 10 P. 2d 523.

In *St. John* v. *Consolidated Construction Co.*, supra, wherein no attempt was made to comply with the demand until the day of the trial, just as in the case at bar, the court allowed it to be filed over the objection of counsel who made the demand, but offering to allow a continuance if desired, the Supreme Court of California there said [182 Cal. 25, 189 P. 277]:

"It was within the power of the court to relieve the plaintiff of his default and permit him to file a bill of particulars; and it not appearing, and it not being claimed, that the action of the court in so doing was prejudicial to the defendant upon the merits of the case,

or upon their presentation to the court, no abuse of discretion appears."

In *Fisher* v. *Brotherton,* supra, the First District Court of Appeals held it to be error where a referee in a retrial of the case before him allowed a bill of particulars to be admitted which had been demanded in the previous trial but not furnished. The appellate court in ruling that the party should have been precluded from giving evidence of the items of this account gave as its reason that it was because

"no application for relief from this default was requested or granted". [82 Cal. App. 532, 255 P. 858.]

In so holding, it interpreted the decision of its Supreme Court in the *St. John* v. *Consolidated Construction Company* case as meaning that when timely application is made for relief from mistake, inadvertence or neglect of the party

"the court may grant the relief as if some order or proceeding had been taken against the party in default."

However, in the *St. John* case it does not appear that any application for relief was made, except the offer to file the bill of particulars at the time of trial.

Under Sec. 104-14-4, U. C. A. 1943, a court may relieve a party from an order, judgment or other proceeding taken against him through his inadvertence, mistake, surprise or excusable neglect. California has a like statute. The California cases which hold that it is a matter of discretion with the court trying the case whether a bill of particulars should be allowed to be filed after the time in the demand has elapsed is more consonant with the provisions of this statute than the cases from other jurisdictions which hold that the statute is peremptory. We have here a situation where, because of the relationship of the parties to each other, neither, when they embarked upon the enterprise, thought it would be necessary to determine what interest each was to have in it, or how much

either was to be paid for work done. The facts were equally within the knowledge of both parties. Appellant does not claim she was prejudiced in the presentation of her case by the court's action in admitting the bill of particulars to be untimely filed, nor did she at the trial object to the filing of the bill of particulars on the ground that no application for relief from his failure to file in time was made before offering to file the bill. This is the same situation as was presented to the California court in the *St. John* case, supra. Under such circumstances, it was not an abuse of discretion to allow the defendant to file the bill of particulars and admit the evidence of the items of this account.

In this connection, appellant also objected to the bill of particulars filed as being insufficient because it did not fully set out defendant's claim for services rendered. The bill of particulars showed that respondent claimed at the rate of $600 per month from September, 1946 ■ to July, 1947, for services rendered in connection with building the lodge and also at the rate of $600 per month from July, 1947 to November, 1947 for managing and operating the lodge. Under the facts and circumstances of this case, we are of the opinion that the bill of particulars was sufficient, especially in view of the fact that appellant, who was employed in a bank, was the one who kept the books of the enterprise, and in view of the fact that it was not contemplated by either party that an itemized account of the services rendered and the value thereof be kept. The facts herein are not analogous to that of a doctor or professional man who renders services or a merchant who sells merchandise and who in their own interests are obligated to keep track of all things done or sold in the ordinary course of their business.

Appellant also contends that the court committed error in failing to make a finding on a material issue when it failed to make a finding of whether there had been any monies available from the partnership accounts which

could have been used to pay the partnership debts instead of from respondent's personal funds.

This suit was brought to determine the relative interests of the parties in the venture. There was evidence that the lodge never operated at a profit except for a month or so. The court found that appellant had advanced a certain amount of monies to the venture and that respondent had also advanced a certain amount and that there were debts still owing. It is implicit in these findings that no partnership funds were available for the payment of these debts or for the sums respondent advanced. We find no merit to this assignment of error.

Appellant also assigns as error the court's finding that respondent worked ten hours per day for six days per week from September, 1945, to February, 1947, in the construction of the lodge, and from February, 1947, until June, 1947, in managing, maintaining and operating the lodge at the rate of $1.50 per hour, and from June, 1947, until it closed in November, 1947, at the rate of $1 per hour, seven hours a day, because the evidence does not sustain such a finding.

In evaluating the evidence upon which this finding is based, it must be kept in mind that the court was confronted with a situation where because of the relationship of the parties to each other at the time the transactions occurred, no accurate accounts of the time and value of respondent's services were kept.

Respondent testified that while he did not keep track of the exact number of hours he worked each day, that from the time of the inception of the venture, he often worked as much as fifteen hours a day and when the lodge was completed he worked during the daytime hours caring for and maintaining the lodge and in the evenings in conjunction with respondent in operating it and that after respondent left in June, he worked the eve-

nings himself. In view of this evidence and the fact that the circumstances are such that it would be practically impossible to get more specific evidence as to the actual time respondent worked, we agree with the court's findings in that respect.

As to the value of this work respondent supervised and also did some of the actual labor in the construction of the lodge and later managed it. There was evidence that the carpenter who worked 80 days in the construction of the lodge, most of which time respondent was assisting him, received $1.50 per hour for his services. Although respondent stated when asked by the court whether his work was worth any more than $1 an hour which was paid certain laborers, that he didn't think his work was more valuable than theirs, he later qualified it by saying that he "hadn't hired out for any rate of pay." He testified that he had worked for a rock quarry and received $300 per month for services as a foreman. Since the value of his work was a matter of opinion and the court as the trier of the facts had before it evidence of the type of work he did, the court was not obligated to take respondent's opinion since it is a matter of common knowledge that the value of services performed in supervising and also working is greater than that of working alone and that since the carpenter received $1.50 per hour for his services, that it is not unreasonable to find that respondent's services were at least of equal value. We conclude that this finding is supported by a preponderance of the evidence.

We have carefully examined appellant's other assignments of error, but find no merit in them.

Affirmed. Costs to respondent.

PRATT, C. J., and McDONOUGH, J., concur.

LATIMER, Justice.

I dissent.

There are two principles announced in Mr. Justice WADE'S opinion with which I disagree. First, I do not believe the court should have received evidence of the work performed by respondent nor monies advanced by him because of his failure to file a bill of particulars until the morning of trial. Second, I am unable to find any evidence in the record to sustain the trial court's finding of the number of hours per day, or the number of days per month worked by respondent.

Section 104-13-3, U. C. A. 1943, provides:

"It is not necessary for a party to set forth in a pleading the items of an account therein alleged, but he must deliver to the adverse party, within ten days after a demand therefor in writing, a copy of the account, or *be precluded from giving evidence thereof*. The court, or a judge thereof, may order a further account when the one delivered is too general or is defective in any particular." (Emphasis supplied.)

When counsel for appellant objected to the introduction of evidence concerning these items which should have been included in a bill of particulars, the following colloquy took place between counsel and the court:

"Counsel for respondent: May I state I have a bill of particulars here that I intended to file, but which, in view of the misunderstanding today, I wasn't able to do, and it has been signed by Mr. Gasparac.

"(Discussion.)

"The Court: This is off the record, Miss Reporter.

"(Discussion.)

"The Court: And I believe I am going to let you file it. I think it improper—*I don't think this matter has had quite the attention it should have had, both with respect to its coming to trial today and also the filing of that, but I am reluctant to adhere to the penalty prescribed by statute* because we just can't find out the facts apparently and do justice between these parties without looking into the matter of Mr. Gasparac's claims.

"If this bill of particulars, by any reason, or for any reason, takes Mr. Beatie by surprise, or puts them to any disadvantage because of its late filing, I will simply continue the matter for sufficient time for him to meet any difficulties that might arise because of its failure and because of the failure to file it before this time, and you *may* file it at this time, and go ahead and receive evidence concerning the matter." (Emphasis supplied.)

Shortly after this statement by the court, counsel for appellant complained of the uncertainty and ambiguity of the statement then filed by respondent and the court made the following observation about the bill:

"By the Court: Don't know what kind of lumber or anything of the kind; very general, I will say that, but let's go ahead examine the witness."

It may be that in the discussion shown as "off the record" the respondent's counsel may have stated some reason for his failure to file timely a bill of particulars but, if so, the substance of this statement cannot be determined from the record. I agree that the court may in its discretion relieve one of default when the party asking relief makes a proper application and showing. The showing should establish that the failure to act timely on the request was excusable and the facts should be such as to permit the judge to make findings of fact which could be reviewed by this court.

The record is barren of any fact or statement showing why respondent failed to furnish a bill of particulars except the phrase

"I have a bill of particulars here that I intended to file, but which, in view of the misunderstanding today, I wasn't able to do."

If there were any misunderstanding at that time, it could be of little avail to respondent for the reason that a bill of particulars should have been filed on or about the 8th day of August, 1948, and the misunderstanding did not arise until the 15th day of November, 1948.

While the remedy provided by the statute is severe, it should be imposed unless an adequate and proper showing is made to the contrary, for the reason that to hold otherwise emasculates the statute and defeats its purpose. It hardly seems an answer to say that the court was willing to grant a continuance as this same consideration is extended in those cases where a proper showing has been made. Litigants should not be placed in the dilemma of either trying their cases piece-meal or waiving the provisions of the statute.

In my opinion, failure to prepare and submit an appropriate bill of particulars is in part responsible for the confusion existing in the record and the lack of evidence of the hours worked by respondent. The findings are to the effect that from September, 1946, to February, 1947, respondent's services were worth the reasonable value of $2,160, based on an average of ten hours work per day for six days per week; that his services performed in managing, operating and maintaining the lodge from December, 1947, until June, 1948, were of the reasonable value of $1,440, said amount being based on an average of ten hours per day for six days per week at the rate of $1.50 per hour; and, that his services performed in the same type of work for the period from June to November have a reasonable value of $714, this amount being based on an average of seven hours per day of six days per week at the rate of $1 per hour.

It is impossible for me to determine how the court arrived at these figures. As I interpret respondent's evidence, the court could just as well have found that he worked six hours a day or that he worked sixteen hours a day. The only testimony as to his services, was a statement by respondent in substance that for certain periods he worked full time on building the lodge. When the trial judge attempted to require the respondent to fix with some degree of certainty the number of hours he worked, the judge met

with little success. These questions were asked by the court and the responses given by the respondent:

"Q. How many hours did you actually put in on this place, working on it? A. Some days I would put in 15 hours on it.

"Q. Well, could you give us some idea of how many hours you put in altogether? A. No, I couldn't sir.

"Q. (Did) you ever compute the hours you put in on this lodge? A. No, sir, I never. I never even thought about it. Never kept a receipt or anything. I never had any reason to do that.

"Q. I understand you didn't ever keep a current account of the time you put in, but since that time or since this law suit have you computed about how much time you put in on this lodge? A. No, sir. I am paying bills right now for—and still paying bills on it and I still don't keep the recipts for it."

It is to be admitted that the agreement between the parties was informal and that exactness could not be required in the number of hours worked each day by respondent. However, it should have been possible for him to determine with some degree of certainty the number of days per week he worked and the average number of hours per day. He might not be able to be more definite than to fix his working day as four hours, eight hours, twelve hours, or from sun-up until sun-down, but even within those limits the trial court could make some determination. Under the present state of the record, I am unable to ascertain how a finding could be made and what evidence justified the trial court in concluding the respondent worked ten hours per day for six days per week.

WOLFE, J. concurs in the dissenting opinion of LATIMER, J.